**Electronically Filed
Intermediate Court of Appeals
29374
20-SEP-2011
07:46 AM**

NO. 29374

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

RICHARD DAMIAN SERRANO, Petitioner-Appellant, v.
STATE OF HAWAII, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(S.P.P. NO. 03-1-0001 (Cr. No. 95-0-0321))

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Petitioner-Appellant Richard Damian Serrano aka Damian Serrano (Serrano) appeals from the "Order Denying Petitioner's Amended Petition for Post-Conviction Relief to Release Prisoner From Custody; Findings of Fact and Conclusions of Law" (Order) filed on September 16, 2008 in the Circuit Court of the Third Circuit (circuit court).[1]  Pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40, Serrano filed a Petition for Post-Conviction Relief to Release Prisoner from Custody and an Amended Petition for Post-Conviction Relief to Release Prisoner from Custody (collectively, Rule 40 Petition).

---

[1]  The Honorable Greg K. Nakamura presided.

On appeal, Serrano contends his counsel, Harry Eliason (Eliason), made the following errors that demonstrated ineffective assistance of counsel: (1) Eliason knew that Serrano felt coerced when the police took Serrano in for questioning in Santa Cruz, California, but failed to call Serrano to testify at the January 12, 2000 hearing on Serrano's Motion to Suppress (Motion hearing); (2) Eliason had numerous reports that identified Serrano as a suspect and drawings of Serrano as a suspect, but did not introduce them into evidence at the Motion hearing or question any witness about them; (3) Eliason failed to confront Santa Cruz Detective Watson (Det. Watson) at the Motion hearing with Det. Watson's September 1993 police report (Watson's police report) that indicated his intent was "to proceed to the residence on 9/18/93 and hopefully arrest and detain Serrano"; (4) when Det. Watson testified at the Motion hearing that he was not sure if the warrant he had for Serrano was valid, Eliason failed to confront him with Watson's police report, in which Det. Watson stated that he verified he had a valid warrant for Serrano's arrest; (5) Eliason did not raise the fact at the Motion hearing that Det. Watson used questions sent to him by the family of the victim, Sequoya Vargas (Vargas), in his interrogation of Serrano; (6) at the hearing on the Rule 40 Petition (Rule 40 hearing), Eliason failed to make use of a letter from Serrano's mother, Diane DiMaria (DiMaria), dated November 22, 1999, informing Eliason that the police drew their guns and handcuffed and arrested Serrano when they came to question Serrano in Santa Cruz; (7) Eliason failed to adequately cross-examine witness Maureen McCubbins (McCubbins) during her preservation deposition; and (8) Eliason failed to designate relevant portions of McCubbins' deposition testimony for use at

2

trial. Serrano challenges Findings of Fact 12 and 13[2] and Conclusion of Law 2[3] (under the Impeachment subheading).

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Serrano's points of error as follows:

(1) Serrano did not demonstrate that Eliason's failure to call Serrano to testify at the Motion hearing resulted in the withdrawal or substantial impairment of a potentially meritorious

---

[2] Findings of Fact 12 and 13 provide:

> 12. It is probable that [Eliason], as an experienced trial attorney, would have presented testimony regarding the issues of a firearm being drawn, the threat of arrest or [Serrano] being handcuffed if he were made aware that such evidence existed, therefore, the assumption is that he was never told of the availability of such testimony.

> 13. [Eliason] testified on January 17, 2008 that if Maureen McCubbins' testimony at trial was inconsistent with her prior statements, then this could be pointed out without reference to her use of prescribed medication and if her testimony at trial was consistent with prior statements, then little would be gained by referring to her use of prescribed medication.

[3] Conclusion of Law 2 provides:

> 2. [Eliason's] choice not to use certain impeachment material available to him did not result in the waiver or substantial impairment of a potentially meritorious defense.

defense. During the Rule 40 hearing, both Serrano and DiMaria testified that guns were either drawn or displayed, and Serrano testified that he was handcuffed. DiMaria testified that Serrano told her he was being arrested.

There was no evidence in the record, at trial, or at the Rule 40 hearing that Serrano had been formally placed under arrest. During the Rule 40 hearing, Eliason denied that either Serrano or DiMaria told him before the Motion hearing that officers had their guns drawn when they entered Serrano's home. Eliason stated that if he had been told that guns had been drawn, he would have "enhanced upon it and argued it" and had Serrano testify to that fact. He testified that because the evidence showed that a uniformed officer and a plain clothes officer were assumed to be carrying weapons, the issue was not whether there were guns present. Eliason stated that Serrano did not tell him weapons were actually drawn. Eliason also specifically recalled that Serrano told him he had not been handcuffed. Eliason stated that he did not call Serrano to testify because the "testimony of the detective was consistent with what my client had told me." The circuit court found Eliason's testimony at the Rule 40 hearing to be credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." State v. Mattiello, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (internal quotation marks, citations, and brackets omitted) (quoting State v. Stocker, 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999)). Finding of Fact 12 was not wrong.

(2) Reports or drawings indicating that Serrano was a suspect in the disappearance of Vargas and whether Det. Watson suspected that Serrano had committed a crime does not aid Serrano's claim of ineffective assistance of counsel. "[T]he requirement of Miranda warnings is triggered by two criteria: (1) the defendant must be under interrogation; and (2) the defendant must be in custody." State v. Ah Loo, 94 Hawai'i 207,

210, 10 P.3d 728, 731 (2000) (internal quotation marks and citation omitted). "'[I]nterrogation,' as used in a <u>Miranda</u> context, [means] 'express questioning or its functional equivalent.'" <u>State v. Melemai</u>, 64 Haw. 479, 481 n.3 643 P.2d 541, 544 n.3 (1982) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 1689 (1980)).

Even if Det. Watson had interrogated Serrano because he thought Serrano was a suspect, Serrano had to have been in custody to trigger the requirement that he be given <u>Miranda</u> warnings. The Hawai'i Supreme Court ruled in Serrano's direct appeal that he had not been subject to a custodial interrogation. <u>State v. Serrano</u>, 97 Hawai'i 269, 36 P.3d 813, No. 23591 (Nov. 28, 2001) (SDO). Therefore, if Eliason erred by failing to cross-examine witnesses with reports or drawings that indicated Serrano was a suspect, it was harmless because Serrano cannot prove the error resulted in the loss of <u>Miranda</u> warnings.

(3) Serrano's reliance upon Det. Watson's report that he hoped to detain and arrest Serrano is misplaced. During the Motion hearing, Eliason had no need to impeach Det. Watson regarding the validity of a warrant and his intent to use it because Det. Watson admitted that "if necessary" he was actually able to take Serrano into custody at that point because he had done a warrant search. However, Det. Watson also stated that if Serrano had not voluntarily agreed to go to the police station, he would have contacted Detective Araujo at the Hawai'i Police Department and asked what he should do with Serrano. Therefore, Eliason did question Det. Watson regarding his intent to arrest Serrano during the encounter. Even if Det. Watson intended to detain and arrest Serrano, he did not do either. Eliason argued at the Motion hearing that Watson used an arrest warrant to coerce Serrano and obtain Serrano's cooperation and statement. Serrano cannot point to the withdrawal or substantial impairment of any potentially meritorious defense for Eliason's failure to

further question Watson regarding his intent to arrest Serrano. Wakisaka, 102 Hawai'i at 514, 78 P.3d at 327.

(4) Eliason got Det. Watson to admit that he had a valid arrest warrant for Serrano and could have arrested Serrano if Serrano had not voluntarily gone with Det. Watson to the police station. Further impeachment of Det. Watson with the prior inconsistent statement that he was not sure whether the arrest warrant was for the same person was not necessary because Eliason's argument hinged on the fact that there was a warrant to arrest Serrano that Det. Watson could have used to coerce Serrano into making a statement. Confronting Det. Watson with an inconsistent statement that he thought the warrant was invalid does not advance Serrano's claim of coercion.

(5) Serrano's Opening Brief states: "Nor did Eliason make any use of the pointed questions drafted by the Vargas family and sent to Detective Watson, which questions were used in interrogating [Serrano], and which certainly underscored potential foul play since the questions centered on leniency, sexual assault, and the location of Ms. Vargas." Serrano makes no other argument in his Opening Brief regarding Eliason's failure to raise the content and source of the questions posed to Serrano by Det. Watson.

In his Reply Brief, Serrano again states that Eliason made a specific error when he "failed to elicit the nature of questions asked of [Serrano] once in police custody, such as whether [Serrano] had sex with the victim and whether [Serrano] would tell where the victim was in exchange for leniency." Serrano argues that the questions indicated he was a suspect in a crime and the target of an investigation and then mentions Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), and Ah Loo, but does not make any specific argument regarding their applicability to the use of the questions sent to Watson.

On appeal, Serrano failed to include any argument in his Opening Brief with respect to Eliason's failure to elicit the

nature of questions asked of Serrano. Therefore, the point of error is waived. HRAP Rule 28(b)(7).

Even if the point of error was not waived, Eliason alerted the circuit court during the Motion hearing in 2000 to the content of the questions and argued that Serrano had been interrogated and coerced by the police. During closing arguments at the Motion hearing, Eliason stated:

> Your Honor, we would just ask the Court to consider just the, uh, the, uh, transcript of that statement and the written questions, Your Honor.
>
> Irrespective of when they may have officially declared this to go from a missing person to a homicide, it's clear by the questions that were in fact sent to Mr. Watson by the Hawaii County Police Department that already was a murder investigation. The questions they were asking were in fact homicide questions, sex assault questions.
>
> The focus had gone to the individuals already, and I think that the statements are, uh, of the officer saying that he was pursuing a missing person are actually proved to be incorrect by the nature of the questions that he asked and the statement itself.

Eliason did not fail to raise the issue during the Motion hearing. Even if Eliason did not expressly review the questions with Det. Watson during the hearing, the issue was timely raised and considered by the trial court and the court had a copy of the questions as an exhibit.

Furthermore, Eliason again raised the issue in the opening brief in Serrano's direct appeal. Eliason quoted the written question and answer, specifically: "Will you tell us where she is in exchange for leniency? Answer: If I knew, would tell them." In its SDO, the supreme court stated that "the motions court did not err when it denied [Serrano's] motion to suppress his statements made to a police officer on September 18, 1993 because the interrogation was not custodial." Therefore, the issue has been ruled upon and relief is not available pursuant to HRPP Rule 40. HRPP Rule 40(a)(3).

(6) The letter dated November 22, 1999 by DiMaria does not, by itself, establish that Eliason was ineffective. Serrano points to part of the letter in which DiMaria asks Eliason to

7

"note how the Santa Cruz statement by my son came about. This is very important. It is all outlined in the investigative materials that Lisa Sobalvarro collected in Hawaii. This needs to be part of your motion . . . to quash the statement from the record." Serrano argues that if Eliason had heeded DiMaria's plea, Eliason would have known that the officers used weapons, handcuffed Serrano, and arrested him.

During the Rule 40 hearing, Eliason stated that he did not recall receiving a letter dated November 22, 1999 from DiMaria or the investigative reports to which it referred. Eliason stated that if he had received the documents, they would have been in his files, which he turned over to Serrano's Rule 40 counsel. Serrano's Rule 40 counsel stated that the letter dated November 22, 1999 was from Eliason's file. However, in his Opening Brief, Serrano admits: "Unfortunately, the investigative 'materials that Lisa Sobalvarro collected in Hawaii' have gone missing." The record from the Rule 40 Petition does not contain any exhibits from Lisa Sobalvarro. Thus, the claim boils down to DiMaria's testimony at the Rule 40 hearing, in which she stated that the materials given to Eliason prior to the Motion hearing contained information that the officers "came with guns and took [Serrano] away" and that Eliason had been informed of this prior to the Motion hearing. In its Order, the circuit court found only Eliason's testimony credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." Mattiello, 90 Hawai'i at 259, 978 P.2d at 697.

(7) Serrano's claim that Eliason was ineffective for failing to adequately cross-examine McCubbins is without merit. Serrano argues that Eliason should have questioned McCubbins about her mental state at the time she gave her preservation deposition on April 14, 2000 because in a letter to the Prosecutor dated April 4, 2000, McCubbins stated she took

narcotics for pain, resulting in short-term memory loss. Serrano also claims Eliason failed to impeach McCubbins regarding her inconsistent statement as to whether her son, Jason (Jason), told her what happened on the night that Vargas was murdered. Serrano claims on appeal:

> The testimony of [McCubbins] was particularly devastating for [Serrano] because she was the only non-defendant to tie [Serrano] to [Vargas]. She testified to [Serrano] threatening Co-Defendant Gibbs by stating "what fucker. You want some of that too?" . . . [McCubbins] testified that [Serrano] was wearing brown surf shorts with the crotch ripped out and shredded and that [Serrano] was wet including his hair. . . . Since the co-defendants charge that it was [Serrano] who took the still living Vargas down a cliffside and caused her death close to the ocean, this testimony strongly supported the claim that [Serrano] was in fact the murderer.

In addition, Serrano points out that Eliason was ineffective because he did not designate portions of McCubbin's deposition regarding her cleaning of the maroon Subaru trunk due to rotted lobsters, the fact that she had engaged in plea negotiations with the Prosecutor's Office to not be charged as an accessory after the fact, and the fact that she knew that Jason had not yet been sentenced. Serrano argues that these subjects were relevant to show bias, interest, and motive to testify.

At the Rule 40 hearing, Eliason stated that he made a strategic decision not to impeach McCubbins based on her use of narcotic painkillers because he did not know what her trial testimony would be. If her statements were inconsistent with other witnesses, he would have provided the State with ample grounds to discount her testimony due to the fact that she had trouble with her short term memory from the narcotic painkillers. Eliason also reasoned that if McCubbins' testimony was consistent with other witnesses, attacking her memory based on the fact that she was on narcotic painkillers would not be helpful because it was consistent testimony and would presumably demonstrate that the painkillers had no effect on her memory. "[M]atters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight." State v.

9

Richie, 88 Hawai'i 19, 39-40, 960 P.2d 1227, 1247-48 (1998) (internal quotation marks and citation omitted; emphasis in original). Finding of Fact 13 was not erroneous.

Nowhere in the Rule 40 Petition did Serrano claim that McCubbins' deposition testimony that Serrano stated "what fucker. You want some too?" or the fact that Serrano was wet had any significance to the trial or that Eliason's failure to question McCubbins about it constituted ineffective assistance of counsel. Serrano did not question Eliason about those statements during the Rule 40 hearing. Serrano has not pointed to where in the record of the Rule 40 proceeding the error occurred or where the alleged error was brought to the attention of the circuit court. Therefore, those points of error on appeal will be disregarded. HRAP Rule 28(b)(4).

(8) Serrano's claims that Eliason did not designate, withdrew, or failed to object to the inclusion of specific portions of McCubbins' deposition for trial is not the same claim as a failure to cross-examine a witness during a preservation deposition.

Even if this court reviews Serrano's claims of ineffective assistance of counsel on the basis that Eliason failed to make proper deposition designations or failed to object to deposition designations, Serrano does not challenge FOFs 14 and 15, which state:

> 14. [Serrano] also contended that [Eliason] should have designated portion[s] of [McCubbins'] deposition regarding (1) her testimony that she cleaned out the trunk of the car in which the victim was transported in [sic] because there were lobsters rotting in there even though the lobsters were delivered sometime after she cleaned out the trunk, (2) testimony relating to her plea agreement, (3) testimony relating to her knowledge of the penalty for a murder conviction, and (4) testimony that her son [Jason] had not yet been sentenced.

> 15. These matters were not inquired into by [Serrano's] counsel during the hearing on the Petition on January 17, 2008.

Eliason was not questioned about any deposition designations for trial during the Rule 40 hearing. By failing to question Eliason about the reasons for the deposition designations, Serrano failed to present any evidence that Eliason's actions or omissions resulted in the withdrawal or substantial impairment of a potentially meritorious defense. Wakisaka, 102 Hawai'i at 514, 78 P.3d at 327. Serrano failed to demonstrate that Eliason was ineffective with respect to the deposition designations of McCubbins. Conclusion of Law 2 was not wrong.

Therefore,

IT IS HEREBY ORDERED that the "Order Denying Petitioner's Amended Petition for Post-Conviction Relief to Release Prisoner From Custody; Findings of Fact and Conclusions of Law" filed on September 16, 2008 in the Circuit Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawai'i, September 20, 2011.

On the briefs:

David J. Gierlach
for Petitioner-Appellant.

Jack N. Matsukawa,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Respondent-Appellee.

Presiding Judge

Associate Judge

Associate Judge

11